MRS. MILDRED O'CONNOR,

versus

JOHN RAWLINS

NO. 8263

COURT OF APPEAL

PARISH OF ORLEANS

WILLIAM A. BELL, JUDGE:

June 5th, 1922.

Court of Appeal,
PARISH OF ORLEANS
FILED June 5/22

BY: WILLIAM A. BELL, JUDGE.

Defendant is sued herein as heir and legatee of his deceased sister, Miss Mary Caroline Rawlins, whose succession he is alleged to have accepted unconditionally. Plaintiff's petition, filed on November 29, 1920, alleges that on June 2nd, 1914, the deceased purchased at public auction, certain real estate, duly advertised in the newspapers of this City, and reading as follows:

> "No. 1127 Felicity Street; lot 66 feet by 138 feet, and 101-foot common alley in rear."

The evidence shows that Miss Rawlins reached the auction exchange just shortly before the property was offered, and that she saw a large, five-foot plan of the property, upon the Auctioneer's stand, which she could see at a distance, though she was not close enough to read carefully the dimensions thereon, because of the crowd, and that she relied entirely upon the newspaper advertisement as above set forth. The plan offered in evidence, as well as the proces-verbal of the auctioneer, shows the description under which the adjudication was publicly made, and which was read in a loud voice before the sale, is as follows:

> "SOLD THIS DAY, at Public Auction, at the Real Estate Exchange, No. 811 Baronne Street, by order and for account of MISS MARY RAWLINS
>
> A certain portion of ground situated in the First District of this City, with all the buildings and improvements thereon, and designated by the municipal number 1127 Felicity Street, in square bounded by Camp, Magazine and Orange Streets; said lot measures 66 feet, 5 inches 6-1/5 lines front on Felicity Street, by a depth on the side line towards Camp Street of 101 feet 2 inches 4 lines, thence a width in the rear of 30 feet 6 inches, thence a further depth towards Orange Street of 2 feet 4 inches 2 lines, thence a further width in the rear of 26 feet 3 inches, and a depth on the side line towards Magazine Street, from Felicity Street towards Orange Street of 138 feet 6 inches and 2/3 line, with the use of a common alley in the rear -- sold to
>
> MRS. M.M. O'CONNOR

508

For the sum and price of Forty Eight
Hundred Dollars ($4800.00) on the
following

TERMS:- One third or more cash, balance
in one and two years; 7 per cent per
annum interest and purchaser pays taxes
for 1914. This property is sold subject
to lease expiring September 30, 1914. Act
of sale before F.J. Dreyfous, Esq., Notary
Public, at expense of purchaser.

New Orleans, La.
June 2nd, 1914.

(Signed) C.A. Tessier,

A U C T I O N E E R.

Immediately after the sale, the purchaser
made a deposit of $500 for which receipt was given, reading:

"No. 1861      New Orleans, June 2, 1914.

Received, from Mrs. M.M.O'Connor, the
sum of Five Hundred Dollars, on account of
purchase of the property 1127 Felicity St.,
adjudicated to her at Public Auction on this
day, for the sum and price of Forty-Eight
Hundred Dollars, as per process verbal before
F.J. Dreyfous, Notary Public; to whom this
receipt must be surrendered as part of the
purchase price.

$500.00      (Signed) C.A.Tessier & Son."

The testimony of the purchaser shows that she
declined to accept the property sold her, or to sign the deed
tendered to her, claiming the dimensions of same to be different
and less than what she believed she had purchased. Her evidence
is confusing as to her exact interpretation of the advertisement,
and after careful examination, we are inclined to the belief
that the real gravamen of her complaint was the fact that the
space on the Camp Street side of the house purchased by her was
not sufficient to permit proper or convenient access by the steps
leading to the entrance of the house on that side.  The per-
tinent parts of her testimony on this subject appear as follows:

"Q.  What did you think the 101 feet
     meant?

A.   Well, there used to be a little
     alley

Q.   You do not mean that you thought
     that alley was 101 feet deep.

A.   I did not see the alley at all.

509

Q. Mr. Jones said that the advertisement was misleading, now the advertisement says 138 feet and 101 feet. Now, I want to know what you think is wrong?

A. If I had known I never would have bought the house with the steps cut off.

Q. It is the steps you are complaining of?

A. I am complaining that I did not get 138 feet by 66 feet and the steps are cut off."

The facts show however, as soon as this complaint was registered with the owner, that plaintiff was offered, but declined, thirty-seven inches additional property off·of the lot adjoining, and lying contiguous to the Camp Street side of the property sold, in order that entrance could be made from that side of the house. It further appears that as soon as this offer was declined, the $500 deposit was promptly tendered, a fact admitted by her as follows:

"Q. Mr. Tessier offered you back this five hundred dollars?

A. Yes, sir.

Q. Almost immediately?

A. Almost immediately.

Q. As soon as you would not take title he offered the five hundred dollars back?

A. Yes, sir."

We are unable to gather from the evidence, that plaintiff wholly relied upon the more or less indefinite description of the advertisement, for she admits, on cross-examination, that she knew all about the property when she bought it, living "next door" "at the time" and "for a number of years" before she bought it. If the advertisement was in any way misleading, it cannot be questioned that from plaintiff's long acquaintance with the location and surroundings of the property, as well as the unavoidable knowledge of the diagonal direction of Felicity Street,·

that the measurements described as "101-foot" could not have applied to the common alley but only to the property-line measurements parallel to and nearest Camp Street.

We are inclined to the views of the trial judge as expressed in his memoranda opinion, that the description as given in the advertisement, would have justified the enforcement of specific performance, but that plaintiff's refusal to either take the property or insist on its tender abrogated the adjudication.

The defendant responds to this suit by exceptions of no cause of action, and prescription of one, three and five years, all of which were referred to the merits by the judge a quo, and answering defendant pleads that he cannot be made personally liable; that the property in question never fell into his sister's succession for the reason that same was sold in June of 1918, long prior to her death, in September, 1920, and that he never knew of plaintiff's claim until amicable demand for the payment thereof was made upon him shortly before the institution of this suit, in November of 1920; that in any event, should he be held liable for any part of this claim, which he specially denies, that same should be lodged against the Succession only as an ordinary claim, subject to privileged debts, mortgage, etc., all in accordance with an orderly administration of the estate.

Agreeing as we do, with the conclusions reached by the judge a quo, that the sale to plaintiff was entirely abrogated by her, with the result therefore, that there was no sale, it follows that plaintiff must be considered as never having been the owner of the property adjudicated to her. Hence, it also follows that the $500 deposited with the auctioneer, cannot be considered as part payment of the purchase price, but at best, simply earnest money, the double of which she could have recovered from the vendor under Article 2463 of the Civil Code, but for her withdrawal from the sale.

The Supreme Court, in Etta Contracting Company v. Bruning, 134 La., 48, reviewing and reversing upon writ of certiorari, a judgment of this Court (10 Orleans Appl. 250) has exhaustively discussed the confused and unsettled jurisprudence of this State upon the effect or not by public adjudication of automatically passing title from vendor to vendee. Counsel for plaintiff has referred in his brief to the case of Maloney v. Aschaffenburg, 143 La. 521, and decisions therein discussed in support of authority for his contention that the deposit made by plaintiff herein must be held as earnest money recoverable under R.C.C. 2463. We take no issue with him upon these authorities, except to hold that they are not convincingly applicable to the case at bar, for the reason that in the cited cases, the sales were contractual rather than public or judicial. However, in Etta Construction Company v. Bruning, the Court draws the sharp distinction between the facts there under consideration, where the vendee did not refuse to comply with, but notarially confirmed the adjudication, with other and different facts, such as in Washburn v. Green, 13 La. Ann. 332, where the adjudicatee refused on demand, to comply with the sale.

In the former case, the Court held, reversing this Court, that the defendant's (vendee's) title originated in the adjudication, while in the latter case, interpreting the ruling in Washburn v. Green, it was held as the accepted jurisprudence of the Court, that in all public sales, whether judicial or non-judicial, refusal of the purchaser to comply with the terms of the adjudication, precluded his ever being considered the owner of the property sold. It is plain, in the case before us, that plaintiff is not seeking to enforce the sale, or to have herself recognized as the owner of the property adjudicated, but the damages sought to be recovered cannot be allowed for the reason that she has barred herself from recovery of damages by her own conduct in withdrawing from the contract, made possible of performance by the vendee's generous offer to deliver

512

additional and sufficient property over that adjudicated. Refusal of the tender of the deposit immediately made to her, after her refusal to accept the deed, and the additional property, must result in a denial of interest , as claimed on said deposit. Attorney's fees, or any other damages herein claimed,are not recoverable , and must be denied.

Finding no liability for damages on the part of the vendee in this case, it follows that none can attach to her succession, or those who have accepted same, though unconditionally. We find no merit in the pleas of prescription herein filed. The action, if any, arising from the transaction sued upon is one necessarily ex contractu, not tortious, and therefore not prescribed in one year. The prescription urged in defendant's brief under R.C.C. 2498, is not applicable, no action having been taken herein for dimunition of price, or for cancelation of the contract on the part of the buyer.

Defendant has prayed for rejection of plaintiff's petition, at his costs, and judgment has been thus allowed, but both the evidence as well as record admissions of the defendant, show that the deposit of $500 herein claimed has never been returned, and is still in the hands of the auctioneer. This amount should be restored to plaintiff, and the judgment of the trial court should be thus amended. In all other respects the judgment appealed from should be affirmed.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be, and the same hereby is amended, by allowing plaintiff judgment for Five Hundred Dollars ($500.00) without interest, plaintiff to pay all costs of both courts. As thus amended, the judgment appealed from is affirmed.


<u>JUDGMENT AMENDED AND AFFIRMED.</u>